## BLAIR–HUGHES CO. v. COSTON et al. (No. 2517.)

(Court of Civil Appeals of Texas. Amarillo. June 10, 1925.)

Chattel mortgages ⬅⟹177(3)—Evidence not sufficient to show conversion of sugar by committee of creditors.

In action for conversion by seller who reserved mortgage on sugar sold to owners of restaurant and café, who became financially embarrassed, committee, representing other creditors than mortgagee, and who were consulted by manager of café appointed by bank to control finances in effort to make business pay, *held* not shown under evidence to have converted sugar which was consumed in business.

Error from District Court, Wichita County; P. A. Martin, Judge.

Suit by the Blair-Hughes Company against G. D. Coston and another, copartners doing business under the name of Coston & Papathan, and others. Judgment for plaintiff against the named defendants, but dismissing suit as to other defendants, and plaintiff brings error. Affirmed.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for plaintiff in error.

⬅⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Bonner, Bonner & Sanford, of Wichita Falls, for defendants in error.

JACKSON, J. This suit was instituted by Blair-Hughes Company, a corporation, against G. D. Coston and F. Papathan, a copartnership, doing business under the name of Coston & Papathan, upon a note for the sum of $3,030.25, interest and attorney's fees, and upon a check for $500 given by the firm to plaintiff, and against C. E. Basham, E. S. Goodner, and H. A. Gray for judgment for the amount of the check which was on the City National Bank of Commerce of Wichita Falls, which had been presented to said bank and payment thereof refused, and for the market value of sugar alleged to have been converted by the last-named defendants, and for foreclosure of a mortgage against all of the defendants and any sugar not consumed or otherwise disposed of.

The defendants G. D. Coston and F. Papathan who, with eight other Greeks, constituted the firm, and who, for the purpose of this opinion, will be called owners, defaulted.

The defendants C. E. Basham, E. S. Goodner and H. A. Gray answered by general demurrer, special exceptions, general denial, and pleaded specially that the alleged chattel mortgage was void because the sugar covered thereby was merchandise daily exposed to sale, and plaintiff had agreed with the owners that they could use the sugar as needed in their business, and they so used it from the delivery thereof until it was consumed by use in their business.

They also allege that neither they nor any one of them nor any one for them exercised dominion or control over the sugar, never took or had possession thereof, never converted nor disposed of it or any part of it, and that they had done none of the things charged by plaintiff.

At the conclusion of the testimony the court gave judgment in favor of plaintiff against the owners for the amount sued for, and peremptorily charged the jury to find for the defendants C. E. Basham, E. S. Goodner, and H. A. Gray. In response to this instruction the jury returned its verdict and judgment was entered accordingly.

The case is before us on a writ of error sued out by Blair-Hughes Company, hereinafter called appellant, assigning as error the action of the trial court in peremptorily instructing a verdict in favor of C. E. Basham, E. S. Goodner, and H. A. Gray, hereinafter called apellees.

The record shows that the owners were engaged in the business of running the Crystal Café and Royal Confectionery. They became indebted to appellant, as well as various other creditors, some of whom were secured and some unsecured. They purchased from appellant 100 bags of sugar and placed it in their storeroom situated immediately in the rear of the café and confectionery, where they kept their supply of groceries. Some little time thereafter, on September 14, 1920, the owners, to cover the other indebtedness of appellant, together with the account for the sugar, executed the note and check sued on, and gave a chattel mortgage on the sugar to secure the payment of the note, which was due October 1, 1920. The mortgage is not in the record, and the terms and provisions thereof do not appear, but the testimony shows it was executed and properly filed for record.

About September 22d the owners, on account of their financial situation, applied to the City National Bank of Commerce, one of their secured creditors, for assistance, and C. W. Ried, vice president, of the bank requested one of the employees of the bank, Ernest Archembeau, to investigate the situation, find out if the owners were making any money and what disposition was being made thereof, and to determine if Archembeau could assist in straightening out their business. The next morning Archembeau went to the owners, told them why he had come, and after a conversation with them, took charge of the cash register, the company books, deposited the money, received and signed the checks for the moneys paid out. With this limitation the owners continued the operation of the business, making the purchases, employing and discharging help, and doing everything in connection with the business, except as above stated, and in the payment of checks of any considerable amount they were consulted by Archembeau. This arrangement continued until the café and confectionery were closed early in December.

Archembeau on the 23d of September made an inventory of the groceries in the storeroom, and found 77 bags of sugar which had not been opened. On September 27th or 28th several of the creditors, some of whom were secured and some unsecured, held a meeting with one of the owners present, and in the discussion it developed that, should the secured creditors foreclose their mortgages, the owners would be forced to close the business. The one of the owners present at the meeting agreed to do anything or sign anything to avoid closing. Some understanding was had that the owners should make an assignment, and the appellees were suggested as a committee to represent the creditors, in which it appears all parties present acquiesced. At this meeting a representative of the appellant, who had himself marked present, but not voting, advised the creditors of the claim and mortgage of appellant, and that the committee would be held responsible if the sugar was used. Papers were later drawn by the attorney selected to represent the creditors and submitted to the owners, and they refused to sign them, but had their attorney draw a different instrument, which they submitted to

the committee, and the committee declined to sign the instrument presented by the owners, and refused to do anything or to function because the assignment was never executed, and they did not keep up with the business, and took no more interest therein than any other creditor. At this first meeting Mr. Ried informed the creditors present of Archembeau's connection with the business, and that he was willing to continue such connection, provided he was allowed absolute charge of the cash register. No other action seems to have been taken on his connection with the business, but no objection was made thereto by any one. On October 9th the creditors had another meeting in which Archembeau made a report, taking into account appellant's claim, which indicated that there was a chance for the creditors to receive some money if more time was allowed and the business permitted to continue, at which meeting no action was taken on the authority of Archembeau, and his connection with the business continued until it was demonstrated that it could not pay out and was closed early in December.

After this last meeting, at which appellant had no representative, Mr. Hall, for appellant, called Archembeau over the phone, and asked if he would deliver to appellant the sugar. What transpired in this conversation is controverted, but the most favorable view to appellant is that Hall was advised by Archembeau that before he could answer he would have to consult the committee, and later called Hall on the phone and told him they would not allow him to deliver the sugar. The testimony is uncontroverted that the committee and no member thereof was consulted; that prior thereto they had refused to act because the assignment was never executed, and that the only party consulted by Archembeau was the attorney of the creditors, who advised him to refuse to assume any responsibility in regard to the delivery or nondelivery of the sugar to appellant. Archembeau testifies that in trying to bargain with appellant for the owners, about which he consulted no one of the creditors and no one of the committee, he offered to buy and deliver to appellant 100 bags of sugar, provided appellant would credit the owners with the purchase price, but this appellant declined to do, because the price of sugar had in the meantime declined. Appellant learned at the first meeting that the sugar was being consumed in the operation of the café and the confectionery. None of the sugar was sold as sugar, but was all made into confectioneries or used in some other way in connection with the café and candy business. When one bag of sugar was consumed the owners went to the storeroom, got another bag, opened and used it, and in this way consumed about 8 bags a week. The sugar thus used was sold, and the proceeds thereof received and deposited by Archembeau in the respective names of the Royal Confectionery and Crystal Café just as the owners had done prior to Archembeau's connection with the business. The money thus received and deposited was used in paying operating expenses, except approximately $3,000, a large portion of which was paid on secured debts and the balance on unsecured claims, none of which was paid to appellant. Archembeau was visited at the owners' place of business by various creditors on various occasions, with whom he discussed the situation, and he consulted with appellees, as creditors, and with C. E. Basham more than with any other creditor. All of the sugar was consumed in the business.

Appellee Goodner, after the connection of Archembeau with the business, continued to sell groceries, for which he was paid, and the City Laundry, with which appellee Gray was connected, continued to do the laundry, and these bills were paid out of the proceeds. The City National Bank of Commerce in which appellee Basham was an officer received some of the proceeds from the operation of the business.

This testimony, in our opinion, does not tend to show that appellees were guilty of conversion. The judgment is therefore affirmed.